IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD P. BEARD, JR., | : | |
| Plaintiff | : | Electronically Filed |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| ARIK HELMAN individually and | : | |
| d/b/a SON OF SANDLAR, | : | |
| SON OF SANDLAR, LLC, | : | |
| SON OF SANDLAR, INC., | : | |
| SANDLAR MANUFACTURING, LLC, | : | |
| AND TWISTED WORLD, LLC | : | |
| | : | |
| Defendants | : | |

**COMPLAINT**

McCORMICK LAW FIRM

By  /s/ Austin White
    Austin White, Esquire
    I.D. 312789
    John G. Himes, Esquire
    I.D. 326265
    Attorneys for Plaintiff
    Edward P. Beard, Jr.

    835 West Fourth Street
    Williamsport, PA 17701
    (570) 326-5131
    (570) 601-0768
    awhite@mcclaw.com
    jhimes@mcclaw.com

Plaintiff Edward P. Beard, Jr. (hereinafter "Mr. Beard"), by and through his attorneys, McCormick Law Firm, files this Complaint against defendants Arik Helman individually and d/b/a Son of Sandlar (hereinafter "Mr. Helman"), Son Of Sandlar, LLC, Son Of Sandlar, Inc., Sandlar Manufacturing, LLC, and Twisted World, LLC (collectively hereinafter the "Defendants"), and in support thereof avers as follows:

## I.  Nature of the Action

1.     This is an action for copyright infringement under Sections 106 and 501 of the Copyright Act, and for breach of contract under Pennsylvania law as a pendent claim.  This action arises out of the defendants' unauthorized reproduction, distribution, creation of derivative works, display, and sale of products bearing a copyrighted visual art work owned by and registered to Mr. Beard.

## II.  Jurisdiction and Venue

2.     This Court has original subject matter jurisdiction over plaintiff's copyright claims pursuant to 17 U.S.C. § 501, *et seq*., and 28 U.S.C. § 1338(a).

3.     The work of visual art to which the copyright claims pertain is registered with the United States Copyright Office, Registration No. VA0002216201, registered July 22, 2020.

4.      This Court has supplemental jurisdiction over Mr. Beard's pendent state claim pursuant to 28 U.S.C. § 1367.

5.      This Court has specific personal jurisdiction over defendants in that, as discussed more particularly below, they have minimum contacts with the Commonwealth of Pennsylvania, have purposefully availed themselves of the privilege of conducting activities within the Commonwealth of Pennsylvania, the claims made herein result from those activities, and it is reasonable for the Court to exercise jurisdiction under the circumstances.

6.      Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, defendants committed acts of copyright infringement in this district, Mr. Helman has breached a contract with a substantial impact in this district, and defendants continue to commit acts of infringement in this district.

### III.  The Parties

7.      Plaintiff Edward Beard, Jr. is an adult individual and resident of the Middle District of Pennsylvania, residing and operating his business at 532 Brick Church Road, Montgomery, Lycoming County, Pennsylvania 17752.

8.      Defendant Arik Helman is an adult individual and resident of Florida, residing at 500 NE 8th Ave., Fort Lauderdale, Florida 33301.  Mr. Helman is the

owner and/or operator of leather businesses and occasionally does business under the trade name Son of Sandlar.

9.      Defendant Son of Sandlar, LLC, is a Florida limited liability company with a registered business address of 500 NE 8th Ave., Fort Lauderdale, Florida 33301.

10.     Defendant Son of Sandlar, Inc., is a Georgia corporation with a registered address at 708 E. Gwinnett St., Savannah, Georgia 31401.

11.     Defendant Sandlar Manufacturing, LLC, is a Florida limited liability company with mailing address at 708 E. Gwinnett St., Savannah, Georgia, 31401.

12.     Defendant Twisted World, LLC, is a Florida limited liability company with a registered business address of 500 NE 8th Ave., Fort Lauderdale, FL 33301.

13.     Upon information and belief, Mr. Helman is the owner, operator, officer, and director of defendants Son of Sandlar, LLC, Son of Sandlar, Inc., Sandlar Manufacturing, LLC, and Twisted World, LLC (collectively hereafter the "Son of Sandlar defendants").  The precise nature of the corporate structure of the Son of Sandlar Defendants is not available to plaintiff, but Mr. Beard is informed and believes, and on that basis alleges, that the Son of Sandlar Defendants acted in concert with Mr. Helman, directly infringed and secondarily infringed Mr. Beard's copyrights, and are likewise legally responsible for the infringement events hereinafter alleged.

### III.  Statement of Facts

14.     Mr. Beard has been at all times the sole copyright owner of a work of visual art titled "Dragon in a circle format design," which has been registered with the United States Copyright Office.  <u>See</u> Copyright Registration No. VA0002216201, registered July 22, 2020, attached as Exhibit A, and depicted below, in its entirety:



15.     Mr. Beard is a world-renowned fantasy artist and entrepreneur who has used the experience, talent, and creativity developed over more than 40 years as an artist to develop his own brand, website, and social media presence under the name "Art of Ed Beard, Jr."

16.    Mr. Beard's art is his full-time job and source of income, and he works hard to keep his brand competitive with, and distinct from, many other fantasy artists.

17.    Mr. Beard creates artwork through a number of media, including but not limited to: airbrushing, painting, drawing, molding, and sculpture. Mr. Beard's artwork has appeared on a number of products both domestically and internationally, including but not limited to: clothing, posters, mugs, puzzles, cars, motorcycles, laptops, playing cards, and other collectable items.

18.    As an entrepreneur, Mr. Beard manages each and every element of his business. He conceptualizes and designs his art, creates and markets his art, and creates works of art by commission, with each piece of artwork being the sole product of his own creativity and hard work.

19.    Mr. Beard specializes in creating fantasy and horror artwork of mythological creatures and subjects, and is particularly well-known in fantasy art circles for his distinct dragon designs.

20.    For example, for decades Mr. Beard has designed and illustrated art that has appeared on a number of cards in the wildly popular card game "Magic the Gathering," which resulted in his name becoming well-known and well-regarded in the fantasy art world. Mr. Beard's name is displayed at the bottom of each of the cards that he illustrated. The name Ed Beard, Jr. is so prominent in the fantasy art

world that Mr. Beard makes multiple guest appearances per year at events where he signs autographs for fans of his artwork.

21.    Mr. Beard's talent and creativity has been recognized by readers of his website, clients, and peers in the industry.  Mr. Beard has won awards for his airbrushed mural work, and has been a featured guest on a variety of television programs that celebrated his designs.

22.    Mr. Beard's art business relies primarily on the revenue produced by his licensing rights to reproduce his works of art, and by selling copies of his works, both over the internet, at in-person events, and by third-parties.  Mr. Beard's art business depends upon his ownership and licensing of his copyrights, and the name recognition and word of mouth generated through social media posts sharing images of his artwork and the displaying and selling of his artwork at events.

23.    Thus, social media is an extremely important part of maintaining publicity for Mr. Beard's art and keeping his art business profitable.  Posts on social media are critical to maintaining awareness of his brand and staying competitive in an industry crowded with competition.  When posts that feature his work spread on social media through various communities of fantasy fans, demand for his artwork surges.

24.     Selling his artwork at fantasy conventions and other gatherings has become a crucial component of Mr. Beard's art business.  Mr. Beard attends a number of these events each year as a vendor, and the word of mouth and name recognition generated through his appearances at these events fuels demand for his artwork.

25.     Mr. Helman owns, operates, and controls a fantasy-themed leather clothing and footwear business which goes by the tradenames "Son of Sandlar" and "Twisted World." Through these businesses, and individually, Mr. Helman sells various boots and articles of clothing and other items over the internet and in person at events, including but not limited to: bags, pouches, straps, appliques, vests, corsets, skirts, gloves, and other clothing items.

26.     Upon information and belief, defendants share ownership of the assets of Son of Sandlar. The Son of Sandlar Defendants act in concert with Mr. Helman, or at his direction, to manufacture, advertise, and bring the products described above to market.

27.     Son of Sandlar maintains an active presence on a variety of social media platforms.  Son of Sandlar uses its social media presence to advertise and sell its products directly to communities of fantasy fans, the same communities that Mr. Beard's art business caters to.

28.     In 2008, at the Florida Renaissance Faire, Mr. Beard and Mr. Helman were both vendors at the event.  Mr. Helman approached Mr. Beard with a dilemma: Mr. Helman had an idea to manufacture a button with a dragon on it, for use on his leather boots, but he was unable to do so successfully.   He thus asked Mr. Beard for some guidance.  Mr. Beard acknowledged the difficulty Mr. Helman was experiencing in creating this concept design, his artistic skill lacking the necessary experience or ability to achieve this design concept, as well as the limited time he had during the active open faire to attempt to teach Mr. Helman, Mr. Beard offered to create the design over the next week and presented the finished design the following show weekend to Mr. Helman.

29.     Indeed, after significant hard work and creative effort, and with absolutely no contribution from Mr. Helman, Mr. Beard created the hand drawn work of visual art of a circular dragon design (hereinafter the "Work") fixed in a tangible medium of expression (a drawing on paper), which Mr. Beard believed would work for a button.

30.     Mr. Beard offered to license the Work to Mr. Helman for use on buttons for his boots.  The license terms were that it was royalty free, revocable, non-transferable, and included strict adherence to four limitations, to including a prerequisites to distribution:  1) that the Work was licensed only for the use on buttons to be sold on boots by Mr. Helman; 2) attribution was required, naming

Mr. Beard as owner of the Work's copyright, and Mr. Beard's website address had to accompany any display/advertisement of the boots with buttons featuring the Work; 3) Mr. Beard's approval of the buttons was required prior to their public display, distribution, and/or sale; 4) That the parties would cross-promote their businesses once the boots went on sale (collectively, the terms of the license are hereinafter referred to as the "Agreement").

31.   Both parties verbally agreed to the terms of the license, including the clearly-articulated limitations described above.

32.   After the license was provided and Mr. Beard supplied Mr. Helman with a copy of the Work, Mr. Beard received no communications whatsoever from Mr. Helman regarding the Work or the buttons.

33.   It was not until July, 2020 that Mr. Beard discovered that Mr. Helman had breached the terms of their licensing agreement and was infringing upon Mr. Beard's copyright in the Work.

34.   Specifically, a collector of Mr. Beard's work was looking at defendants' products, recognized Mr. Beard's distinct art style appearing on a button on defendants' boots, and then sent Mr. Beard a private message about the product being sold by Mr. Helman.

35.   Mr. Beard then recognized his drawing and realized that Mr. Helman had breached the terms of their agreement.  An example of an infringing product is

10

reproduced below, via a screenshot of a social media post and defendants' website (accessed in July, 2020):







36.     Specifically, the Work was being reproduced, distributed, and offered for sale on buttons without any notice to Mr. Beard, without attribution to Mr. Beard, and without referral to Mr. Beard's website – and, in fact, defendants were affixing to the Work "Son of Sandlar © 2018", falsely representing to the public that the Work was created by the defendants.

37.     Upon becoming aware that Mr. Helman had breached the terms the Agreement, on July 20, 2020, Mr. Beard contacted Mr. Helman to notify him of the breach, infringement, and revocation of the license.

38.     Mr. Helman acknowledged that his actions were in breach of the Agreement's express terms.  In an initial email exchange, Mr. Helman also acknowledged that Mr. Beard was the sole creator of the Work and offered to cease selling buttons featuring the Design if Mr. Beard desired.

39.     Nevertheless, the defendants did not stop their infringing activities.

40.     On July 28, 2020, the undersigned sent defendants a cease-and-desist letter informing them that the license had been revoked, and demanding that the defendants immediately discontinue any and all actions that infringed upon Mr. Beard's copyright in the Work.  See Cease-and-Desist Letter, attached as Exhibit B (with offer to compromise section redacted pursuant to Fed. R. Civ. Pro. 408).

41.     Despite receiving the cease-and-desist letter and notification of the revocation of the limited license, the defendants did not comply with any of its demands, and brazenly have continued their infringing conduct.

42.     Upon deep investigation as a predicate to this action, Mr. Beard has learned that the defendants have been reproducing, advertising and selling products featuring the Work, without authorization, for years.  Some of the infringing conduct engaged in by defendants include:

a.      Reproducing the Work on boot buttons not in compliance with the express terms of the Agreement;

b.      Reproducing the Work on products other than boots, for instance, on leather bags, leather appliques, and other products;

c.      Reproduction of the Work on buttons sold not connection with the sale of boots, or the upgrading of boots already sold;

d.      Distribution of copies of the Work to the public by sale, rental, lease, or lending;

e.      Preparation of derivative works from the Work; and

f.      Publicly displaying the Work when promoting, advertising, and/or selling boots with buttons featuring the Work, and claiming credit for the creation of the Work.

As an example, here is an image of a leather applique on a boot, depicting the work and being offered for sale by defendant as early as 2015:



And an image of the Work appearing on leather bags for sale at an event by

defendants in 2017:



43.     Defendants have repeatedly displayed, advertised, and sold products

bearing unauthorized copies of the Work within the Commonwealth of

Pennsylvania, specifically, at the "Pennsic War[1]" event, a live event which takes

place annually near Portersville, Pennsylvania.

---

[1] Pennsic War, named as a combination of Punic Wars and Pennsylvania, is a
fantasy and/or medieval themed festival that draws attendees from across
Pennsylvania and the United States, and draws approximately 10,000 attendees
each year since 2000.

44.     Defendants have physically attended Pennsic War annually, and have had, numerous times, a vendor booth set up at that event where they offer for sale and actually sell products that contain unauthorized copies of the Work.

45.     Pennsic War promotes its events through the creation of advertisements that chronicles the activities, classes, and vendors that will be available at the event that year.  These advertisements are published across social media and in print publications that are distributed across the Commonwealth of Pennsylvania, including the Middle District.  Son of Sandlar has been featured in the annual Pennsic War advertisements as a vendor for years, and many of the Son of Sandlar advertisements contain an unauthorized copy of the Work.  Below is a copy of defendants' advertisement in merchant guide for Pennsic War 2019, which advertisement features a pair of boots with the Work appearing on it in a leather applique:



46.     The defendants have directly infringed Mr. Beard's copyright in the Work by reproducing, advertising and selling products featuring the Work at Pennsic Wars and other events within the Commonwealth of Pennsylvania, and have continued to do so despite demands from Mr. Beard to cease and desist.

47.     In addition, the defendants have directly infringed Mr. Beard's copyright in the Work by selling products featuring an unauthorized copy of the Work directly to consumers through the Son of Sandlar websites, including products shipped into the Middle District of Pennsylvania, and advertising those infringing products for sale directed to consumers within the Middle District of Pennsylvania.

48.     Some of the reproductions amount to derivative works under the Copyright Act, and thus are infringing for that reason as well.

49.     The defendants continue to infringe Mr. Beard's exclusive rights under the Copyright Act.

50.     As a direct result of the conduct of defendants, Mr. Beard has suffered and will continue to suffer damages, both actual and statutory.

51.     Additionally, defendants have realized unlawful and unjust profits from their unauthorized reproduction, distribution, creation of derivative works, and display of copies of the Work.

52.     Defendants have committed all of the aforesaid acts deliberately, willfully, maliciously, and oppressively, without regard to Mr. Beard's rights, and have refused to stop their infringing behavior even after an express demand from Mr. Beard that they do so.

## COUNT I

### (Direct Copyright Infringement vs. all Defendants)

53.     The averments contained in paragraphs 1 through 52 above are incorporated as though fully set forth herein.

54.     Defendants have directly infringed Mr. Beard's copyright in the Work by distributing, reproducing, selling, creating derivative works, and publicly displaying the Work on their products and advertisements, without authorization.

55.     Defendants are not, and have never been, licensed or otherwise authorized to reproduce, publicly display, distribute, sell, create derivative works, and/or use Mr. Beard's Work in the above-described ways, or in any way whatsoever for a medium other than buttons for boots and pursuant to the express terms of the Agreement that has been breached.

56.     The above-described conduct by defendants constitutes copyright infringement under Sections 106 and 501 of the Copyright Act.  See 17 U.S.C. §§ 106 and 501.

57.     The foregoing acts of infringement and continued infringement by defendants have been willful, intentional, and purposeful, in disregard for and indifferent to Mr. Beard's rights under the Copyright Act.  The limited license was revoked and the infringing conduct has not ceased.

58.     As a direct and proximate cause of the infringement by the defendants, Mr. Beard is entitled to actual damages and defendants' profits as a result of the infringement pursuant to 17 U.S.C. § 504(b).

59.     Alternatively, Mr. Beard is entitled to statutory damages of up to $150,000 for the willful infringement of Mr. Beard's Design pursuant to 17 U.S.C. § 504(c)(2).

60.     Mr. Beard is further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

61.     The Court should enter an injunction against the defendants under 17 U.S.C. § 502 to restrain their continued infringement of Mr. Beard's copyright.

## COUNT II

### (Contributory Copyright Infringement vs. All defendants)

62.     The averments contained in paragraphs 1 through 61 above are incorporated as though fully set forth herein.

63.     Defendants have directly infringed Mr. Beard's copyright in the Work by distributing, reproducing, selling, creating derivative works, and publicly displaying the Work on their products and advertisements, without authorization.

64.     Mr. Helman is the owner and/or officer and/or director of the Son of Sandlar defendants.

65.    Mr. Helman was aware of and knew that the conduct specified above infringed upon Mr. Beard's rights under the Copyright Act.

66.    To the extent infringement was committed directly by the Son of Sandlar defendants, Mr. Helman knowingly participated and contributed to the infringement and is therefore personally liable, jointly and severally, secondarily to the Son of Sandlar defendants.

67.    Likewise, to the extent infringement was committed directly by Mr. Helman, the Son of Sandlar defendants knowingly participated and contributed to the infringement secondarily to Mr. Helman and therefore the infringement is imputed upon them.

68.    The defendants are thus also liable as contributory infringers.

## COUNT III

### (Vicarious Infringement vs. All defendants)

69.    The averments contained in paragraphs 1 through 68 above are incorporated as though fully set forth herein.

70.    Defendants have directly infringed Mr. Beard's copyright in the Work by distributing, reproducing, selling, creating derivative works, and publicly displaying the Work on their products and advertisements, without authorization.

71.    Mr. Helman is the owner and/or officer and/or director of the Son of Sandlar defendants.

72.     Mr. Helman was aware of and knew that the conduct specified above infringed upon Mr. Beard's rights under the Copyright Act.

73.     To the extent infringement was committed directly by the Son of Sandlar defendants, Mr. Helman, by virtue of his position as owner/officer/director of the Son of Sandlar defendants, had the right and ability to supervise the infringing activities of the Son of Sandlar defendants, and had a direct financial interest in such activities.

74.     Likewise, to the extent infringement was committed directly by Mr. Helman, the Son of Sandlar defendants had the right and ability to supervise the infringing activities of Mr. Helman, and had a direct financial interest in such activities.

75.     The Son of Sandlar defendants are thus vicariously liable for the direct infringement committed by Mr. Helman, and Mr. Helman is vicariously liable for the direct infringement committed by the Son of Sandlar defendants.

## **COUNT IV**

### **(Breach of Contract Against Arik Helman)**

76.     The averments contained in paragraphs 1 through 75 above are incorporated as though fully set forth herein.

77.    Mr. Beard seeks to avail himself of the relief available to him under the Copyright Act as the remedy for the unlawful conduct engaged in by defendants.

78.    However, and/or only to the extent that Mr. Beard's claims are contractual in nature and not preempted by the exclusive remedies under the Copyright Act, and relative to Mr. Helman only, Mr. Beard asserts that Mr. Helman has breached the terms of their Agreement.

79.    Specifically, the Agreement between Mr. Beard and Mr. Helman contained clearly-defined terms that Mr. Helman was required to follow in order to reproduce, distribute, display, and sell the Work on buttons in connection with his boots, as more particularly described in paragraph 30 above.

80.    Mr. Helman committed a breach of contract relative to those obligations by:

1) failing to attribute Mr. Beard as the author and owner of the copyright in the Work;

2) falsely claiming copyright authorship/ownership of the Work;

3) failing to include Mr. Beard's website address when promoting, advertising, and/or selling boots with buttons featuring the Work;

4) failing to obtain Mr. Beard's pre-approval of the buttons prior to public display, distribution, and sale;

5) failing to engage in a cross-promotion of businesses with Mr. Beard; and

6) utilizing the Son of Sandlar Defendants to engage in the reproduction, sale, distribution and display of the Work, despite the fact that the limited rights were non-transferable.

81.    As a direct and proximate result of Mr. Helman's breach of the Agreement, Mr. Beard has suffered a loss of income, damage to his reputation, loss of prestige, and loss of professional standing, and will continue to suffer from the same.  These damages are sought only to the extent they are founded in contract and not preempted by the exclusive remedies found within the Copyright Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Beard respectfully requests that the Court enter judgment in his favor and find the following:

1.    That defendants have directly and secondarily infringed upon Mr. Beard's copyright in the Work in violation of 17 U.S.C. § 106 and 501;

2.    That defendants be enjoined from continuing to infringe upon Mr. Beard's rights, to include the cessation of any and all reproductions, advertisements, distributions, creations of derivative works, public displays or offers to sell any product upon which the Work appears;

3.      That defendants remove all depictions of the infringing products from any website, e-commerce, or print advertisement used by defendants, including but not limited to any forums or social networking platforms;

4.      That Defendants be required to account for all profits, income, receipts, or other benefits derived by defendants as a result of their unlawful conduct;

5.      That Mr. Beard be awarded either: (a) actual damages and defendants' actual profits, gains, or advantages, of any kind attributable to defendants' infringement of Mr. Beard's copyright; or (b) statutory damages of up to $150,000 per copyrighted work infringed pursuant to 17 U.S.C. § 504(c)(2), whichever is greater;

6.      That Mr. Beard be awarded his costs, expenses, and attorneys' fees pursuant to 17 U.S.C. § 505;

7.      That defendant Arik Helman breached his contract with Mr. Beard, and awarding Mr. Beard damages for that breach;

7.      That Mr. Beard be awarded pre-judgement interest; and

8.      Such other and further relief as the Court may deem just and proper.

McCORMICK LAW FIRM

By  /s/ Austin White
    Austin White, Esquire
    I.D. 312789
    John G. Himes, Esquire
    I.D. 326265
    Attorneys for Plaintiff
    Edward P. Beard, Jr.

    835 West Fourth Street
    Williamsport, PA 17701
    (570) 326-5131
    (570) 601-0768
    awhite@mcclaw.com
    jhimes@mcclaw.com